SHINDLER v. ROBINSON et al.

(Supreme Court, Appellate Division, Second Department. May 29, 1912.)

1. WILLS (§ 742*)—EXECUTION—OWNERSHIP OF PROPERTY.

Where a will directed the executor to sell certain property and apply the proceeds to the payment of any mortgage on property devised in trust for the life beneficiary of the trust estate, neither the living remaindermen nor the representatives of deceased remaindermen had sufficient interest in the property directed to be sold to create a valid mortgage thereon.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1900–1906; Dec. Dig. § 742.*]

2. WILLS (§ 564*)—RENTS AND PROFITS—AS PASSING INTEREST IN LAND.

Under Real Property Law, § 100, the life beneficiary of rents and profits of realty has no interest or estate in the land as such.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1228–1232; Dec. Dig. § 564.*]

3. WILLS (§ 634*)—CONTINGENT REMAINDERS.

A devise of property in trust to pay the income to a certain person for life, and upon the death of the life beneficiary to convey the trust estate to certain of her children designated, "or such of them and such other children as she may leave her surviving at the time of her death in fee simple absolute in equal proportions," gave a remainder to the children, contingent upon surviving at the life beneficiary's death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. WILLS (§ 628*)—CONSTRUCTION—VESTED OR CONTINGENT ·ESTATES.

The primary rule to determine whether interests in a testamentary trust are vested or contingent is the testator's intention as deduced from the entire will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1460; Dec. Dig. § 628.*]

5. REMAINDERS (§ 14*)—"CONTINGENT REMAINDERS"—AT COMMON LAW.

At common law "contingent remainders" were interests or possibilities rather than estates, but finally were assigned in equity and could be released at law to an owner in possession, or transferred to strangers under the doctrine of estoppel.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 10; Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 2, pp. 1503–1506; vol. 8, p. 7615.]

6. REMAINDERS (§ 14*)—CONTINGENT REMAINDERS—MORTGAGE.

Under Real Property Law, §§ 35–38, 59, classifying contingent remainders as expectant future estates and declaring them "descendible, devisable and alienable, in the same manner as an estate in possession," contingent remainders are with few exceptions descendible, devisable, and alienable, but are not alienable where the contingency is in respect to a person taking rather than the event, so that while a remainder which is contingent on the remaindermen surviving the life beneficiary is neither descendible nor devisable, it may be presently alienable, and hence subject to mortgage, though such a mortgage or purchaser's title at foreclosure would become void on the contingent remaindermen's death before that of the life beneficiary's.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 10; Dec. Dig. § 14.*]

7. JUDGMENT (§ 682*)—PERSONS BOUND—VENDOR AND PURCHASER.

One who granted to mortgagors his interest in the mortgaged property is not bound by any judgment rendered in the mortgage foreclosure proceedings, if not a party thereto.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1203–1205; Dec. Dig. § 682.*]

8. WILLS (§ 865*)—CONSTRUCTION.

Where property was devised in trust for life with remainder over to the life beneficiary's children, if they survive her, if the trust property did not pass under the residuary clause upon the death of the children before the life beneficiary's it would be distributed among testatrix's heirs as of the time of her death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2188–2199; Dec. Dig. § 865.*]

Appeal from Special Term, Westchester County.

Action by Juliette Shindler against Cornelia C. Robinson and others. From a judgment for plaintiff, defendants appeal. Affirmed as modified.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Vincent P. Donihee, of New York City (Edward S. Hatch, of New York City, on the brief), for appellants.

Charles I. McBurney, of New York City, for respondent.

HIRSCHBERG, J. This is an appeal from a judgment foreclosing a mortgage on certain real estate in the village of Tarrytown and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

directing a sale of the property. The mortgaged premises consist of four parcels, designated respectively as: (1) The Stone Yard; (2) the Point Dock; (3) the Lumber and Coal Yard; and (4) the Tripp Lot. The mortgagors' interest, if any, in this real estate was acquired from one Simon Schindler, who died seised in fee in 1883, leaving a last will and testament which was duly admitted to probate the same year. By the fourth article of the will the testator devised the Lumber and Coal Yard and the Tripp Lot to his executors, to hold in trust during the lives of his daughter, Cornelia Caroline Shindler (now Robinson), and his son Samuel W. Shindler, and to pay the income to said Caroline C. Robinson during her life. The provision for Samuel W. Shindler is immaterial, as he predeceased his sister. The will makes the following provision for the disposition of the trust estate after the death of Cornelia C. Robinson, who is still living:

"And upon the further trust on the death of my said daughter Cornelia Caroline * * * to convey the property in this article of my will mentioned to Simon W. Sencerbox, James W. Danforth, Cornelia Jacobina Robinson and Clarence R. Robinson, the children of my said daughter Cornelia Caroline, or such of them and such other children as she may leave her surviving at the time of her death in fee simple absolute in equal portions."

Then follows a power of sale to the executors during the term of the life estate, with provisions amounting to a direction to hold the proceeds upon the same trust as that under which the realty was to be held.

By the sixth article of the will, the Point Dock property was devised in trust to the executors to pay the income to the testator's daughter, Cornelia C. Robinson, during her lifetime, and upon her death the corpus of the trust estate was to be disposed of in the same manner as the corpus of the trust estate created by the fourth article.

By the fifth article, the testator directed the executor to sell the Stone Yard property, and to apply the proceeds of such sale to the payment of any mortgage on the property devised in trust by the fourth article of the will. There was a mortgage of $5,000 on that trust property. The Stone Yard property has never been sold, and the mortgage on the trust estate has never been satisfied.

By the seventh article of the will, the testator gave another son, James Shindler, "all the rest and residue" of his estate, "real and personal and effects whatever of whatever description and wherever situated not hereinabove otherwise devised, bequeathed or appropriated."

On the 27th day of March, 1893, Cornelia C. Robinson, the life beneficiary of said trust estates, and the remaindermen, executed the mortgage in question upon the trust real estate and the Stone Yard property to James Shindler.

On the 5th day of April, 1893, James Shindler and his wife, the plaintiff herein, executed a deed to Cornelia C. Robinson and the remaindermen. By this deed James Shindler granted and released unto them so much of the real estate heretofore referred to as vested in him under and by virtue of the residuary clause of the will. The habendum clause provided that Cornelia C. Robinson was to have and to hold the premises for and during her natural life, and that upon her death

the same were to go to the remaindermen absolutely, subject, however,. to any charge imposed upon the premises by the will and to the exer-. cise of the power of sale contained in the fifth article thereof.

On May 24, 1898, James Shindler duly assigned the mortgage. to his wife, Juliette Shindler, who thereafter instituted this action to foreclose the same. From the judgment of foreclosure directing a sale of the mortgaged premises, said Cornelia C. Robinson, life beneficiary of the trust estates, and the living remaindermen and the representatives of all the deceased remaindermen, have appealed, claiming that the mortgagors had no mortgageable interest in the premises covered by the mortgage.

The learned trial court in its first conclusion of law held that the Stone Yard property had been equitably converted to personalty by the peremptory direction for its sale, contained in the fifth article of the will. All the parties to this appeal concede the correctness of that conclusion. Nevertheless, the counsel for the plaintiff, respondent, claims that the appellants had a mortgageable interest in that property, and that the property could be sold upon the foreclosure of the mortgage, subject to the power of sale in the executors. Neither the property directed to be sold by the will nor the proceeds thereof is specifically given to any of the mortgagors by the terms of the will.

[1] The executors are directed to sell the property and apply the proceeds to the payment of a mortgage on the trust estate. None of the appellants have sufficient interest in such property to create a mortgage lien upon it enforceable by foreclosure and sale. Stake v. Mobley, 102 Md. 408, 62 Atl. 963; Walker v. Killian, 62 S. C, 482, 40 S. E. 887; Chick v. Ives, 2 Neb. (Unof.) 879, 90 N. W. 751. In State v. Mobley, supra, the facts were much more favorable to the validity of the mortgage than they are in the case at bar. There the mortgage had been executed by one to whom the proceeds of the equitably converted real estate had been given by the will. Nevertheless the court held that such beneficiary could not create a mortgage lien upon the realty which had been converted to personalty by a power of sale. Of course, in the case at bar it may be that the mortgage would operate in equity as an assignment of any interest that any of the mortgagors may have in a surplus, if any, left after the payment of the mortgage directed to be paid. It is not, however, necessary to determine in this case whether such surplus would pass to the testator's heirs at law, next of kin, or residuary devisee, as none of them has a present mortgageable interest in the equitably converted real estate.

[2] The trusts created by the fourth and sixth articles of the will are express trusts to receive the rents and profits of real estate, and to apply the same to the use of Cornelia C. Robinson during her lifetime. She had no interest or estate in the land as such by virtue of the trust (Noyes v. Blakeman, 6 N. Y. 567; Laws 1909, c. 52 [Consol. Laws, c. 50, § 100]); and she could not convey her beneficiary interest (Laws 1909, c. 52, § 103).

The property, therefore, if sold under mortgage foreclosure, must be sold subject to the trust estate in the trustees, who are not parties to

this action, and who hold for the benefit of Cornelia C. Robinson the cestui que trust. And the judgment appealed from must be modified so as to protect her interests. As she did not possess sufficient interest to create a mortgage lien upon the property, a question might possibly be raised as to the enforcement of her personal liability in this action. See Dudley v. Congregation, etc., of St. Francis, 138 N. Y. 451, 457–459, 34 N. E. 281. But no such question was raised upon the trial, nor has it been presented on this appeal.

[3] The children of the life beneficiary are given contingent remainder interests in the trust estate. The language of the will is that upon the death of the life beneficiary the executors are to convey the trust estate to the designated children of the life beneficiary, "or such of them and such other children as she may leave her surviving at the time of her death in fee simple absolute in equal portions." In reaching the conclusion that these remainder interests are contingent rather than vested, no special significance has been accorded to the fact that the direction to the executors is "to convey" the property to the remaindermen. Such a direction would not necessarily be inconsistent with the vesting of the remainder interests upon the testator's death. Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811.

[4] The intention of the testator, as deduced from the entire instrument, is the primary canon of construction in determining whether the interests are vested or contingent. It would seem difficult for the testator in the case at bar to have chosen language more plainly indicative of an intention to suspend the vesting of the remainder interests until the death of the life beneficiary. The executors are directed to convey to the designated children of the life beneficiary "or such of them and such other children *as she may leave her surviving at the time of her death.*" The death referred to is specifically stated to be the death of the life beneficiary, and the gift is only to those children who shall be living at the time of that death. Under such circumstances it is quite obvious that futurity was annexed to the substance of the gift, and that the remainder interests are contingent rather than vested.

[5] At common law, contingent remainders were interests or possibilities, rather than estates (Fowler, Real Property [3d Ed.] p. 209); and for a time they were not supposed to be the subject of alienation (Washburn, Real Property [6th Ed.] vol. 2, § 1557). Finally, however, it was held that such interests were inheritable or devisable, could be assigned in equity and released at law to an owner of the land in possession, or transferred to strangers by resort to the doctrine of estoppel. Reeves, Real Property, Special Subjects, § 608.

[6] By the Real Property Law, contingent remainders are classified as expectant future estates and are declared to be "descendible, devisable and alienable, in the same manner as an estate in possession." Laws 1909, c. 52, §§ 35, 36, 37, 38, 59. Thus by the mandate of the statute such contingent interests now, with few exceptions, are descendible, devisable, and alienable. See Moore v. Littel, 41 N. Y. 66; Hennessy v. Patterson, 85 N. Y. 91; and Kenyon v. See, 94 N. Y. 563. Of course, where the contingency upon which the remainder is to vest is in respect to the person who is to take rather than the event, the

remainder interests are not alienable, devisable, or descendible.　See Robinson v. N. Y. Life Ins. & Trust Co., 75 Misc. Rep. 361, 133 N. Y. Supp. 257.　So, too, in the case at bar the death of the contingent remaindermen during the lifetime of the life beneficiary will defeat the vesting of their interests, and therefore such interests can be neither descendible nor devisable, terminating as they do with the deaths of their owners during the lifetime of the life beneficiary.　It ·does not follow, however, that the present right of such remaindermen to the future possession of the trust estate, if they survive such beneficiary, is not presently alienable under the statute.

That such a right is alienable, and consequently mortgageable, was held by the United States Circuit Court for the Southern District of New York, in the case of Ward v. Ward (C. C.) 131 Fed. 946, affirmed 145 Fed. 1023, 74 C. C. A. .146.　There it appeared that a testator left his residuary estate in trust to his executors with a direction to pay the income to a beneficiary during life and upon the beneficiary's death to divide the principal equally among three cousins of the testator.　The will further provided that the children of any cousin dying before the termination of the trust should take in the deceased cousin's place, and that, if a cousin should die leaving no children, the estate should be divided among the surviving cousins or their children.　The court held that each of the cousins took a contingent estate in expectancy, and that, although such contingent estate was from the nature of the attached contingency neither descendible nor devisable, it was alienable under the statute and could be mortgaged.　Judge Cox, writing for the court, said (page 950 of 131 Fed.):

"It may well be that the estate in question is not devisable for the reason that the event which makes the will operative—the death of the testator— defeats the estate.　For the same reason it is not descendible; it remains an expectant estate only during the life of the beneficiary, and, as such an estate, it cannot descend because the death of the intestate, before that of the beneficiary, terminates it.　But why may it not be alienated?　Such an estate has a tangible present value.　It may be sold and property which may be sold may be mortgaged.　Can there be any doubt, if the complainant had sold his interest for a valuable consideration, that the vendee would not be entitled to complainant's share?　If he had mortgaged or pledged his interest, would not the purchaser on foreclosure be entitled to the same right?　The trust estate was in esse, and the beneficiary was well advanced in years.　The only risk the purchaser of such an interest would incur would be the chance that the beneficiary would outlive the remainderman.　In the due course of nature this would be an unlikely event.　Like a life policy, the complainant's interest possessed an actual existing value.　To hold ·that it was incapable of disposition and worthless in the hands of the transferee seems to run counter to the progressive spirit of the law, the tendency of which is to limit the suspension of the power of alienation within as narrow bounds as possible."

Thus in the case at bar the remaindermen's contingent interests, although neither descendible nor devisable, were alienable under the statute, and the mortgage upon such interests is valid.　Of course, such mortgage or the purchaser's title at the foreclosure sale would be rendered void by the death of the contingent remaindermen before the life beneficiary.　See Jones on Mortgages, vol. 1, § 137.　That fact, however, only affects the value of the mortgage as security, and ·does not impair or destroy the right to its creation as a legal document.

The cases cited by the appellants, holding that a mere possibility not coupled with an interest is not assignable to strangers, are not in point with the facts in the case at bar. The contingent remaindermen had more than a mere possibility of acquiring an estate. They had a fixed vested right, acquired by will at the instant of the testator's death, to have the estate in possession upon surviving the life beneficiary. That right was a fixed right, rather than a naked possibility, to take as purchasers under the devise in the will and upon the death of the life beneficiary. Such a vested right in a contingent remainder is recognized as an estate by the Revised Statutes, and is alienable by the owner. See Hennessy v. Patterson, 88 N. Y. 103; Belcher v. Burnett, 126 Mass. 230; and Putnam v. Story, 132 Mass. 205, 211.

[7] Considerable space has been devoted in the briefs to a consideration of the effect of the deed given to the mortgagors by James Shindler. It does not appear whether he is now living. He is not a party to this action, and consequently will not be bound by any judgment rendered herein. His deed does not in terms purport to convey any interest in the estate that might come to him as one of the heirs at law of the testator. It purports to convey merely such interest in the mortgaged premises as may have vested in him by virtue of the residuary clause of Simon Shindler's will. Should all the remaindermen predecease the life beneficiary, in view of the inclusive nature of the residuary clause, it may be that the entire trust estate would ultimately pass to James Shindler as residuary devisee (see Matter of Allen, 151 N. Y. 243, 45 N. E. 554; Smith v. Smith, 141 N. Y. 29, 35 N. E. 1075; and Toerge v. Toerge, 9 App. Div. 194, 41 N. Y. Supp. 244), and that his deed has conveyed that right as residuary devisee to the mortgagors. In the discussion of this matter upon the briefs submitted by the appellants and the respondent, it is assumed that James Shindler's deed was executed prior to the execution of the mortgage. In the record it appears that the mortgage was executed on March 27, 1893, and the deed afterwards, on April 5, 1893. It would seem questionable, therefore, even assuming the deed to have passed any rights in the mortgaged premises to the mortgagors, whether such rights were covered by the mortgage. In any event, as has been said, the judgment in this action cannot bind James Shindler, who is not a party.

[8] Should the trust property, on the other hand, not pass under the residuary clause upon the deaths of the contingent remaindermen prior to the life beneficiary, it would be distributable among the testator's heirs at law as of the time of the testator's death (Van Nostrand v. Marvin, 16 App. Div. 28, 44 N. Y. Supp. 679), and a portion thereof, on that theory, would vest in James Shindler and in said Cornelia C. Robinson, as such heirs at law; and that interest of Cornelia C. Robinson would probably pass by the mortgage.

It follows that the judgment should be modified by excluding the Stone-Yard property from the premises to be sold, and by inserting a provision that the sale be made subject to the trusts created by the fourth and sixth articles of the will of Simon Shindler, deceased; and as so modified the judgment should be affirmed, without costs. All concur.